NOT FOR PUBLICATION

RECEIVED
OCT 23 2009
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN STANSBURY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BROTHER INTERNATIONAL CORPORATION (USA), <br><br> Defendant. | Civil Action No. 06-4907 (FLW) <br><br><br> MEMORANDUM OPINION |
| JAMES MCFADDEN, <br><br> Plaintiffs, <br><br> v. <br><br> BROTHER INTERNATIONAL CORPORATION, et al., <br><br> Defendants. | Civil Action No. 07-1905 (FLW) <br><br><br> MEMORANDUM OPINION |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court are Defendant Brother International Corporation's (USA) ("BIC") motions for reconsideration of the Court's June 29, 2009 Letter Order, which found that "BIC has 'the legal right, authority or ability' to obtain the documents requested by Plaintiffs" and which "therefore directed [BIC] to obtain the requested documents from BIL and to produce them" to Plaintiffs. (6/29/09 Ltr. Order at 6). The Court has fully reviewed the documents submitted in support of and in opposition to BIC's motions, and considers same without oral argument pursuant to FED.R.CIV.P. 78. For the reasons outlined below, BIC's motions for reconsideration are DENIED.

I.  **Background**

On June 29, 2009, the Court entered an Order requiring BIC to produce certain design and engineering documents that were in the physical possession of BIC's Japanese corporate parent, Brother Industries, Ltd. ("BIL"). While BIC disputed that it had legal custody over the requested documents, the Court determined that pursuant to FED.R.CIV.P. 34, the design and engineering documents sought by Plaintiffs were in BIC's "possession, custody, or control[.]" BIC disagrees with the Court's decision and requests that the Court reconsider same.

Specifically, BIC argues that reconsideration is appropriate because new evidence shows that BIC is unable to obtain the documents requested by Plaintiffs. In this regard, BIC argues that new evidence demonstrates that its inability to obtain the design and engineering documents sought by Plaintiffs "is *not* theoretical, but actual." (BIC's Br. at 7 (emphasis in original)). BIC claims that after it received the June 29, 2009 Letter Order, BIC's Vice-President and Chief Legal Officer, Henry Sacco, spoke with a member of BIL's in-house legal department, Moritoshi Kawakami, in an effort to obtain the design and engineering documents, which the Court ordered BIC to produce. BIC contends that Mr. Kawakami informed BIC that BIL "would not provide its proprietary design, manufacturing or engineering documents to BIC" because the requested documents are "confidential" and "unnecessary for BIC to conduct its business activities." (*Id.*) BIC further argues that Mr. Kawakami "also confirmed BIL's past practices of not providing BIC with such documents." (*Id.*) As a result, BIC argues that the evidence now before the Court establishes that not only does BIC not have customary access to the requested design and engineering documents in the ordinary course of business, but BIC also does not have the practical ability to obtain the requested documents. As such, BIC argues that reconsideration is appropriate.

In addition, BIC argues that reconsideration is appropriate because cases decided under virtually identical facts as those presented here support a finding that BIC does not control the documents sought by Plaintiffs. BIC points to three cases that it referenced in the initial joint submission to the Court and argues that the Court "apparently overlooked" these cases, which "demonstrate unequivocally that under virtually identical factual circumstances, courts have concluded that a finding of control is *not proper*." (*Id.* at 9 (emphasis in original)).

The three cases relied on by BIC are *Pitney Bowes, Inc. v. Kern Int'l Inc.*, 239 F.R.D. 62 (D.Conn. 2006), *United States Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245 (D.D.C. 2005) and *In the Matter of Certain Hard Disk Drives, Components Thereof, and Products Containing Same (Toshiba)*, U.S.I.T.C. Inv. No. 337-TA-616, 2008 WL 324479 (U.S.I.T.C. Aug. 6, 2008). BIC argues that as in *Pitney Bowes* and *ASAT*, the record here does not support a finding of control because (1) the requested documents are "confidential and proprietary documents belonging to BIL"; (2) the requested documents are not accessible by BIC as part of its ordinary course of business; (3) "BIC has been able to sell and service BIL machines in the absence of the documents Plaintiffs seek"; (4) "there is no evidence that BIL has ever provided BIC with the design and engineering documents sought by Plaintiffs, that BIC has ever utilized such documents in connection with its business, or that anyone at BIC has ever seen such documents"; and (5) "[t]he only evidence in the record is that BIL has denied every request by BIC for design and engineering documents and the specific documents at issue." (BIC's Br. at 13-14). BIC also claims that like the subsidiaries in *Pitney Bowes* and *Toshiba*, BIC simply sells and services the machines at issue and "has no role in the

3

actual design and engineering of these machines and does not possess, have access to, or need such design and engineering documents and it has no legal or practical ability to obtain them." (*Id.* at 14-15).

Further, BIC argues that reconsideration is appropriate because the Court shifted Plaintiffs' burden of proving that BIC has control over the requested documents to BIC to prove that it does not have such control. In support of this argument, BIC points to the fact that in the June 29, 2009 Letter Order, the Court noted that "there is no evidence that if BIC requested [the design and engineering] documents from BIL that BIL would deny access to same." (6/29/09 Ltr. Order. at 5). BIC also contends that the Court incorrectly shifted the burden of proof by premising its conclusion that BIC had control over the requested documents "upon a finding that BIC failed to establish that it could not access the requested documents." (BIC's Br. at 18). BIC claims that "[t]he Court's focus in its Letter Order on the absence of evidence presented by BIC that BIL would deny access to the subject documents if BIC made a request is, respectfully, misplaced" because "[t]he burden is ***not*** on BIC as the subsidiary to demonstrate a lack of access or control over documents held by its parent corporation[.]" (*Id.* (emphasis in original)).

BIC also claims that reconsideration is warranted because the Court's reasons supporting its finding of control are not supported by applicable case law. In this regard, BIC takes issue with the Court's reliance on the following factors in determining that BIC had control over the requested documents:

> (1) . . . there is no evidence that if BIC requested the documents from BIL that BIL would deny access because BIL purportedly denied BIC access to documents only on two prior occasions and those occasions were distinguishable; (2) BIL is paying for defense costs and expenses and agreed to consult with BIC about settling any liability

4

> expenses; (3) the documents are relevant to the litigation; and (4) BIC has not made a request for the documents.

(*Id.* at 19-20). BIC claims that under governing case law, none of these reasons support a finding of control.

With respect to the first reason, BIC claims that the record demonstrates that BIL has refused to provide information to BIC on more than two occasions. Indeed, BIC claims that the Rule 30(b)(6) witnesses identified multiple instances where BIC was unable to obtain requested information. In addition, BIC argues that contrary to the Court's finding, the instances described by the Rule 30(b)(6) witnesses where BIL refused to produce requested documents are not distinguishable from the request made by Plaintiffs. Instead, BIC claims that the instances are akin to the issue presented here because "Plaintiffs (third-parties) are requesting that BIC procure BIL design and engineering documents (BIL intellectual property)." (*Id.* at 23). BIC also claims that to the extent the Court finds the instances to be distinguishable because here the requested documents are sought as part of litigation, "that is a distinction without any significance." (*Id.* at 24). In this regard, BIC argues that in order for there to be control, a subsidiary must be able to both secure documents helpful for use in litigation **and** to meet its own business needs. BIC claims that "Plaintiffs have offered *no evidence* that BIL documents can be secured by BIC from BIL to meet BIC's business needs." (*Id.* at 24 (emphasis in original)). Further BIC claims that Plaintiffs never asked a single question of the Rule 30(b)(6) witnesses regarding BIC's ability "to obtain proprietary engineering or design documents from BIL" and that Plaintiffs should not be permitted to rely on a strategy whereby they purposefully fail to ask "direct questions on the fundamental issues and then argue that BIC failed to demonstrate the absence of control." (*Id.* at 21).

5

Likewise, BIC claims that the second factor (i.e. BIL's payment of BIC's litigation expenses and agreement to consult with BIC about settling any liability expenses) cannot support a finding of control. BIC argues that BIL's agreement to pay BIC's litigation expenses "does not indicate that BIL has any other role in this litigation," nor does the suggestion that BIL could potentially "have some unspecified role in a settlement." (*Id.* at 25). Indeed, BIC argues that in *Pitney Bowes*, the court "categorically rejected the argument that the foreign parent having a role in the potential resolution of the action was dispositive of whether a subsidiary had control over the documents sought by a plaintiff." (*Id.* (citing *Pitney Bowes*, 239 F.R.D. at 69)) As a result, BIC argues that "this Court's assumption that BIC could obtain the requested documents from BIL because BIL was paying legal expenses and may be involved in settlement has no basis in law." (*Id.*) Further, BIC argues that as addressed by the court in *ASAT*, the mere fact that a parent company may be threatened by the fact that its subsidiary has been sued and faces a potentially adverse result, does not mean that the subsidiary "'**has the ability to control its parent's documents**[.]'" (*Id.* at 26 (quoting *ASAT*, 411 F.3d at 255) (emphasis added by BIC)).

Similarly, BIC argues that the fact that the requested design and engineering documents may be relevant is a separate inquiry from whether BIC has control over same. In this regard, BIC argues that "[t]o the extent this Court's finding that the documents sought by Plaintiffs are relevant to this litigation was meant to suggest that BIC can obtain these documents for its usual business needs, the findings made by the Court do not support such a link." (*Id.* at 29). Here, BIC argues that it does not have customary access to the documents requested by Plaintiffs. Further, BIC claims that "Plaintiffs provided *no* evidence that BIC has *ever* obtained the subject documents from BIL for *any* of its usual business needs, much less for purposes of providing 'highly relevant' documents in this

or any other litigation." (*Id.* at 29 (emphasis in original)). BIC also contends that to the extent a subsidiary's ability to secure documents of the parent to meet its own business needs and documents helpful for use in litigation establishes control, the "*Gerling* opinion makes clear that the circumstances must be such that the subsidiary has the ability to obtain documents for use in the ***litigation at issue***." (*Id.* at 29 (citing *Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue*, 839 F.2d 131, 141 (3d Cir. 1988)) (emphasis in original)). BIC argues that "[h]ere, Plaintiffs have offered ***no*** evidence that BIC has obtained the subject documents from BIL for BIC's use in this litigation or any other litigation, or that BIC has obtained any documents from BIL helpful to its own cause in this litigation while withholding production of the BIL documents sought by Plaintiffs." (*Id.* at 30). Indeed, BIC argues that its Rule 30(b)(6) witnesses testified that "BIC has ***not*** obtained documents from BIL to either respond to discovery or for use in supporting its affirmative defenses." (*Id.*)

Finally, with respect to the fourth factor, BIC argues that it was not required to seek to obtain the requested documents from BIL before arguing that it does not control same. In fact, BIC argues that such a requirement "would be anathema to the well-settled law that the burden is on the party seeking the discovery to demonstrate that the subsidiary has the requisite control over the foreign parent's documents." (*Id.* at 31). Further, BIC claims that "there is no basis for his [sic] Court to conclude that Camden Iron's court's off-handed reference to the subsidiary's theoretical inability to obtain the requested documents supports a finding of control within the meaning of Rule 34 here" because in *Camden Iron & Metal Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438 (D.N.J. 1991) the facts indicated that the subsidiary had customary access to the requested documents. (*Id.* at 33).

Plaintiffs oppose BIC's motions for reconsideration. Initially, Plaintiffs requested that the Court strike the Declaration of Henry J. Sacco (the "Sacco Declaration"), which was offered by BIC

7

as new evidence establishing its inability to obtain the requested design and engineering documents. The Court refused to immediately strike the Sacco Declaration as requested, but instead instructed Plaintiffs to respond to BIC's motion for reconsideration as if the Sacco Declaration had been stricken and informed Plaintiffs that if the Court decided to consider the Sacco Declaration, then the Court would provide Plaintiffs with the opportunity to depose Mr. Sacco and to supplement their briefing on these motions.

Treating the Sacco Declaration as if it had been stricken, Plaintiffs oppose BIC's motions for reconsideration arguing that BIC has failed to establish any valid basis for the extraordinary remedy. Plaintiffs claim that reconsideration is only appropriate where there is (1) an intervening change in the controlling law; (2) newly discovered evidence that was not available at the time the original motion was decided; or (3) the need to correct a clear error of fact or law to prevent manifest injustice. Here, Plaintiffs contend that there has neither been a change in controlling law since the Court's issuance of the June 29, 2009 Order nor has new evidence become available that would warrant reconsideration being granted in this matter. Thus, Plaintiff's claim that reconsideration would only be appropriate if BIC could establish the need to correct a clear error of fact or law to prevent manifest injustice. Plaintiffs, however, contend that BIC cannot make such a showing "because the Court made no such error." (Pls.' Opp'n Br. at 11).

In this regard, Plaintiffs argue that despite BIC's claims to the contrary, the Court did not impermissibly shift the burden of proof from Plaintiffs to BIC on the issue of control. Instead, Plaintiffs argue that they produced more than sufficient evidence "to establish that BIC has 'control' over the BIL documents[.]" (Id. at 12). Namely, Plaintiffs claim that they established BIC's control over the design and engineering documents in question by demonstrating "through BIC's own

designated witnesses' testimony that BIL has provided BIC with information relating to the functionality of the MFC machines, that BIC [sic] has no policy against providing such information to BIC, and that . . . BIC would expect BIL to provide it if BIC asked BIL to do so." (*Id.*)

In addition, Plaintiffs claim that after establishing that BIC has control over BIL's documents the burden "shifted . . . to BIC to produce evidence that it does not." (*Id.*) "Despite having ample opportunity to do so," Plaintiffs claim that "BIC did not even attempt to refute or rebut that evidence with anything other than argument by its counsel." (*Id.* at 13). Indeed, Plaintiffs claim that (1) "BIC did not cross-examine its designees to clarify any mistakes or ambiguities BIC believed may have existed in the deposition transcripts;" (2) "BIC's designees made no effort to revise relevant portions of their deposition transcripts, even though Plaintiffs granted them an extra month to prepare errata;" and (3) "BIC did not support its opposition briefs with any factual material other than the evidence Plaintiffs obtained in those depositions." (*Id.*) Plaintiffs further argue that the Court's statement that "it does not appear that BIC has customary access to the requested design and engineering documents in its ordinary course of business[,]" does not, as BIC contends, preclude a finding that BIC has control over the documents. (6/29/09 Order at 4-5). Rather, Plaintiffs claim that the Court's statement regarding BIC's lack of customary access to the documents in question simply reflected the fact that while "BIC has been able to obtain from BIL information of the sort Plaintiffs seek in discovery, it also indicates that BIC does not receive such documents on a regular – or customary – basis." (*Id.* at 13, n. 6). Plaintiffs contend that that fact "does not detract from the unrebutted testimony and documentary evidence, however, which makes clear that BIC can – and does – obtain such information whenever it wants or needs it." (*Id.* at 13-14, n. 6).

9

Plaintiffs also argue that they established BIC's control over the design and engineering documents at issue by demonstrating that (1) "BIC is the sole marketer and distriutor of MFC machines in the Unites States[;]" (2) "BIC was BIL's agent in the transactions giving rise to this litigation[;]" and (3) BIC's "relationship with BIL is such that it can obtain from BIL . . . the information BIC needs for this litigation and to conduct its day to day operations." (*Id.* at 14). BIC argues that "applicable caselaw makes clear," that "evidence demonstrating such a relationship establishes control for purposes of Rule 34, regardless of whether the moving party has presented evidence that a subsidiary has already obtained information of the type the moving party seeks in discovery." (*Id.*)

## II. Analysis

In the District of New Jersey, motions for reconsideration are governed by L.Civ.R. 7.1(i). According to L.Civ.R. 7.1(i), a party seeking reconsideration shall file "[a] brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked."

"Reconsideration is an extraordinary remedy, that is granted very sparingly[.]" *Brackett v. Ashcroft*, Civil Action No. 03-3988 (WJM), 2003 U.S. Dist LEXIS 21312, *5 (D.N.J. Oct. 7, 2003) (internal quotation marks and citation omitted). As such, there are only three grounds upon which relief may be granted. Namely, to succeed on a motion for reconsideration, the movant must establish "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Importantly, reconsideration is not appropriate where a party essentially just raises its

disagreement with the Court's initial decision. *See Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1988). Thus, "[a] motion for reconsideration is improper when it is used 'to ask the Court to rethink what it has already thought through - - rightly or wrongly.'" *Oritani Savings & Loan Ass'n v. Fid. & Deposit Co. of Maryland*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (quoting *Above the Belt v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). Further, L.Civ.R. 7.1 "does not contemplate a Court looking to matters which were not originally presented" (*Florham Park Chevron*, 680 F. Supp. at 162); instead, "the moving party is obligated to point out the controlling facts or dispositive case law that the Court necessarily overlooked in rendering its decision." *Ciba-Geigy Corp. v. Alza Corp.*, Civil Action No. 91-5286, 1993 U.S. Dist. LEXIS 3971, *4 (D.N.J. March 25, 1993).

Here, BIC seeks reconsideration because (1) new evidence demonstrates that BIC does not have control over the documents in question; (2) cases overlooked by the Court that were decided under virtually identical facts establish that BIC does not have control over the subject documents; (3) the Court erroneously shifted the burden of proving control from Plaintiffs to BIC; and (4) the Court's reasons for finding control are not supported by the applicable case law. The Court addresses each of these arguments in turn.

### A.  Newly Discovered Evidence

BIC claims that newly discovered evidence demonstrates that it does not have control over the design and engineering documents requested by Plaintiffs. The allegedly newly discovered evidence relied upon by BIC is the Sacco Declaration, which BIC obtained shortly after the Court

issued its June 29, 2009 Letter Order.[1] In the Sacco Declaration, Mr. Sacco relays that he communicated with Mr. Kawakami, informing the latter of the Court's June 29, 2009 decision and requesting that BIL provide BIC with the requested design and engineering documents so that BIC could produce them to Plaintiffs. Mr. Sacco further explains that Mr. Kawakami informed him that BIL would not provide the requested documents to BIC because BIL considered the documents confidential and unnecessary for BIC to conduct its business activities. Mr. Sacco also stated that Mr. Kawakami confirmed BIL's past practices of not providing BIC with such documents.

The Court refuses to consider the Sacco Declaration and BIC's arguments made in reliance thereon in determining the instant motions for reconsideration. While BIC is correct that it had no obligation to attempt to obtain the documents at issue from BIL before arguing that it lacked control over same, nothing prevented BIC from doing so. The information contained in the Sacco Declaration was "readily available" at the time Plaintiffs' original application for discovery was heard. *Sanders v. Trinitas Hosp.*, Civil Action No. 02-1655 (JWB), 2005 U.S. Dist. LEXIS 18985, *8 (D.N.J. Aug. 24, 2005) (finding that strong policy exists against "entertaining reconsideration motions based on evidence that was readily available at the time that the original motion was heard"); *Ciba-Geigy Corp.*, 1993 U.S. Dist. LEXIS 3971, at *4 (finding that "there is a strong policy against entertaining reconsideration motions based on evidence that was readily available at the time that the original motion was heard, but, for whatever reasons, was not presented to the Court"). BIC, however, chose not to pursue the documents. While BIC was certainly within its rights not to

---

[1]Plaintiffs requested that the Court strike the Sacco Declaration. In support of their application to strike, Plaintiffs, in part, relied upon the fact that the Sacco Declaration contained hearsay statements. The Court does not reach the alleged hearsay nature of the Sacco Declaration because it finds that the Sacco Declaration does not qualify as newly discovered evidence for the purposes of L.Civ.R. 7.1(i).

attempt to obtain the documents in question, its decision not to was solely within its own control. BIC cannot now argue that the information contained in the Sacco Declaration is newly discovered for reconsideration purposes. While that information may have been unknown to BIC at the time Plaintiffs' initial application was heard, it was not unknowable. BIC made a strategic litigation decision not to attempt to obtain the requested design and engineering documents; a decision that BIC was free to make.[2] However, the fact that BIC was not obligated to attempt to obtain the documents does not mean that it was unable to do so. The information contained in the Sacco Declaration was available to BIC at the time of Plaintiffs' original application and, as such, the Court declines to consider same in deciding the instant motion for reconsideration. *See A.K. Stamping Co. v. Instrument Specilaities Co.*, 106 F. Supp. 2d 627, 665 (D.N.J. 2000) (refusing to consider evidence submitted after initial decision was made where party "was not unable to obtain this evidence in time to oppose [the motion]" but "was simply unwilling to do so").

**B.     Cases Overlooked by the Court**

BIC argues that reconsideration is warranted because the Court overlooked the following decisions in concluding that BIC had control over the requested design and engineering documents: *Pitney Bowes*, 239 F.R.D. 62, *ASAT*, 411 F.3d 245 and *Toshiba*, 2008 WL 324479. BIC claims that these cases, which were decided under very similar facts to those presented here, support a finding that BIC does not control the documents in question.

In order to be significant to the Court's reconsideration analysis, "the decision of law claimed to have been 'overlooked' must be 'controlling.'" Comment 6(e) to L.Civ.R. 7.1 at 76. Here, the

---

[2] Indeed, as BIC notes and as the Court previously determined, Plaintiffs, as the party seeking production, bore "the burden of establishing that BIC controls" the documents in question. (6/29/09 Ltr. Order at 3).

decisions relied upon by BIC do not represent Third Circuit caselaw. Indeed, the decisions do not even emanate from this District. As such, the cases cited to by BIC "clearly do not represent 'controlling decisions' sufficient to establish a proper basis for reconsideration." *Engers v. AT&T Corp.*, Civil Action No. 98-3660 (JLL) 2006 U.S. Dist. LEXIS 85117, *12 (D.N.J. Nov. 15, 2006).

Moreover, contrary to BIC's assertion that the *Pitney Bowes*, *ASAT* and *Toshiba* decisions were overlooked, the Court did, in fact, carefully review and consider same. The Court, however, determined that there were enough differences between the facts presented in the cases cited by BIC and the instant matter to render those decisions' determination of control inapplicable here. The fact that the Court did not explicitly address all of BIC's arguments with respect to the aforementioned cases in its Letter Order does not mean that it overlooked same. *See Ashton v. AT&T Corp.*, Civil Action No. 03-cv-3158 (DMC), 2006 U.S. Dist. LEXIS 4787, *4-5 (D.N.J. Feb. 2, 2006) (stating that "[a]n argument is not deemed overlooked because it is not specifically addressed in a court's opinion.")

### C. Burden of Proof Shifted from Plaintiffs to BIC

BIC argues that contrary to controlling law, the Court impermissibly shifted the burden of proving control from Plaintiffs to BIC. In this regard, BIC claims that the Court incorrectly shifted the burden of proof by requiring BIC to prove that it did not have control over the requested documents, instead of requiring Plaintiffs to prove that BIC had control over same.

Contrary to BIC's assertions, the Court did not shift the burden of proof from Plaintiffs to BIC. Indeed, in the June 29, 2009 Letter Order, the Court specifically acknowledged that Plaintiffs, "as the party seeking production, . . . [bore] the burden of establishing that BIC controls [the requested design and engineering documents]." (6/29/09 Ltr. Order at 3). The Court held Plaintiffs

to this burden and found that they had presented sufficient evidence to establish that BIC controlled the documents in question. The fact that the Court noted that there was "no evidence that if BIC requested [the design and engineering] documents from BIL that BIL would deny access to same" did not impermissibly shift the burden of proof from Plaintiffs to BIC. Instead, this statement was premised on the evidence presented by Plaintiffs in support of their application for the requested discovery. Indeed, based on the Rule 30(b)(6) deposition testimony cited by Plaintiffs, the Court determined that BIL had historically refused to produce documents to BIC (even documents to which BIC did not have customary access) under limited circumstances that the Court found to be distinguishable from those presented here. This evidence coupled with evidence demonstrating that BIL is paying for BIC's legal defense in this matter and may cover the cost of any settlement reached or judgment rendered in this case led the Court to conclude that it would be "inconceivable that BIC would not be able to obtain the requested documents[.]" (*Id.* at 6).

The Court, therefore, concluded that BIC had control over the requested design and engineering documents based on evidence provided by Plaintiffs. Only after reaching this conclusion did the Court note that "BIC's inability to obtain the requested documents 'is at best theoretical' as it does not appear that BIC has '[]ever made even an informal request for the . . . documents at issue[.]'" (*Id.* (quoting *Camden Iron*, 138 F.R.D. at 443)). The fact that the Court included this observation in its Order did not impermissibly shift the burden of proof from Plaintiffs to BIC.

The Court was aware that Plaintiffs had the burden of proof and squarely placed this burden on Plaintiffs' shoulders. BIC, of course, had every right not to seek to obtain the design and engineering documents from BIL; documents it believed it did not control. BIC also, however, had the right and opportunity to counter Plaintiffs' demonstration of control with any arguments and/or

evidence it chose to put forward. BIC believed that Plaintiffs could not satisfy their burden of proof based on the available evidence. The Court disagreed, finding that Plaintiffs met their burden of establishing that BIC had control over the requested documents.

In reaching this decision, the Court referenced the fact that BIC had not attempted to obtain the documents from BIL. In so doing, the Court was not suggesting that BIC had an obligation to seek the documents from BIL, nor was the Court impermissibly shifting the burden of proof from Plaintiffs to BIC. Instead, the Court was simply noting that because BIC decided against seeking to obtain the documents from BIL, BIC's inability to obtain same was theoretical and, as such, the Court had to weigh the evidence put forth by Plaintiffs without consideration of BIC's actual inability to obtain the documents. On the record before it, the Court determined that Plaintiffs had established control. Thus, the Court referenced BIC's theoretical inability to obtain the requested design and engineering documents simply to note that had BIC chosen to attempt to obtain same from BIL and put forth evidence that it was unable to do so, then such evidence would have been considered by the Court in its control analysis and may have, though not necessarily would have, been sufficient to overcome Plaintiffs' demonstration of control.

### D. Finding of Control

BIC argues that the Court's stated reasons underlying its decision that BIC has control over the design and engineering documents in BIL's physical possession are not supported by applicable case law. The Court disagrees. The Court determined that Plaintiffs established BIC's control by putting forth credible evidence that (1) historically, BIL had only denied BIC access to requested information, even where that information was not customarily (i.e. regularly) accessible by BIC in its day-to-day business operations, in limited situations, which were distinguishable from those

presented here; (2) BIL has agreed to pay all of BIC's litigation costs and expenses in this matter; and (3) BIL agreed to consult with BIC about paying any liability expenses incurred as a result of either an adverse judgment in this matter or the settlement of this litigation.

The Court did not overlook any controlling legal precedent in coming to this conclusion, but instead determined that based on the *Camden Iron* and *Gerling* decisions, under the facts presented here, control existed. In addition, the Court did not overlook the non-controlling decisions cited by BIC. For example, the Court did not find that BIL's agreement to pay BIC's litigation expenses or BIL's potential role in the resolution of this matter were dispositive of the control issue. Instead, like the court in *Pitney Bowes*, this Court considered these to be factors considered along with others in determining whether control existed under Rule 34. *See* 239 F.R.D. at 69. Further, as previously explained, the Court did not require BIC to seek to obtain the requested documents from BIL before arguing that it did not control same. Indeed, as already stated, BIC was well within its rights not to attempt to obtain the documents from BIL. Moreover, nothing in the Court's June 29, 2009 Letter Order suggests that the Court determined that BIC had control over the requested design and engineering documents because those documents were "clearly relevant to this litigation." (6/29/09 Ltr. Order at 6). Rather, the Court was well aware that the issue of relevance was separate and distinct from that of control under Rule 34.

In addition, the Court did not overlook facts that were material to its determination that BIC has control over the design and engineering documents in BIL's physical possession. The Court acknowledges, as BIC points out, that the testimony from the two Rule 30(b)(6) witnesses indicates that there have been more than two instances where BIC has been unable to obtain requested information from BIL. This fact, however, does not alter the Court's conclusion that the evidence

presented by Plaintiffs establishes that BIC controls the requested documents. Indeed, despite the fact that there have been more than two instances of refusals by BIL, the Court finds that Plaintiffs' questioning of the Rule 30(b)(6) witnesses established that BIL's refusal to provide requested documents to BIC has occurred in limited circumstances. Further, while BIC makes much out of Plaintiffs decision not to focus direct questioning on whether BIC ever requested documents similar to those requested here from BIL, the Court finds equally probative Plaintiffs' questioning concerning instances where BIC requested information from BIL and BIL refused to provide it. Also pertinent was testimony elicited on the issue of whether BIL has a policy against sharing information with BIC. This testimony supported the conclusion that no such policy existed. Similarly relevant was information provided by Plaintiffs that shortly after Plaintiffs sent BIC a demand letter in August 2006, BIC contacted BIL and requested information concerning issues involved in this litigation, which BIL provided.

Based on the record before it, the Court determined that BIC has control over the design and engineering documents requested by Plaintiffs. As explained above, the Court did not overlook any controlling decisions or material facts in reaching this conclusion. BIC's disagreement with the Court over whether Plaintiffs satisfied their burden of proving control is just that - - a disagreement, and, as such, is not an appropriate basis for granting reconsideration of the Court's initial decision. *See Florham Park Chevron*, 680 F. Supp. at 162.

**III.     Conclusion**

For the foregoing reasons, BIC's motions for reconsideration are DENIED. An appropriate Order follows.

Dated: October 23, 2009

                                              */s/ Tonianne J. Bongiovanni*
                                              **TONIANNE J. BONGIOVANNI**
                                              **United States Magistrate Judge**